NEW-YORK,
May, 1830.
Calking
v.
Baldwin.

</div>

<div style="text-align:center">

Motion for new trial denied.

</div>

---

<div style="text-align:center">

W. Calking and others *vs.* S. W. Baldwin.

</div>

Where an individual is authorized to erect a dam across a public river upon certain conditions, if the object of the act appears to be *the improvement of the navigation* of the river, although privileges be granted to such individual, he is not liable to an action for injuries sustained by others in the construction of the work, if by the act a mode of compensation is provided.

The party injured must seek his remedy in the mode pointed out by statute and cannot bring his action at law. Nor can he object that the other par_ ty has not had the damages assessed, where either party may be the actor.

DEMURRER to pleas. The declaration is in *case* for flowing the lands of the plaintiffs by means of the erection of a dam in the Seneca river. The defendant pleaded that the Seneca river was a public highway used for the navigation of boats, rafts., &c. and that by an act of the legislature, entitled, " An act to authorize Jonas C. Baldwin to erect a dam across the Seneca river," passed February 24th, 1809, it was enacted that it should and might be lawful for Jonas C. Baldwin, his heirs or assigns, to erect and maintain a dam across the Seneca river at the head of the rapids commonly called M'Harries rifts, of such height as should be necessary *for improving the navigation of the river*, not exceeding 7 1-2 feet on the rapids above the dam, provided that an apron to the dam should be constructed, of a certain form and of paticular dimensions and elevation so as to admit of the pass-

age of rafts and boats down, and fish up the river, and that a canal and lock, for the passage of the largest boats employed on the river from above the dam to the waters below it should be erected and maintained. And further, that Jonas C. Baldwin, his heirs and assigns, were authorized by the act to enter upon any land necessary for the erection of the dam and canal, first paying to the owner or owners thereof such damages or compensation for the same as they might agree on ; and if they could not agree, or if the owner or owners were infants, *feme covert* or otherwise incapacited from contracting, making it the duty of Baldwin to apply to any three judges of the common pleas of Onondaga to assess the damages, giving due notice, &c, and declaring that the payment of such sum as should be so assessed should be deemed and taken as a *full compensation for such damages ;* and providing further, that the like proceedings should be had in cases where land should be injured by the flowing of the waters of the river, occasioned by such dam, *either on the application of Baldwin or of the owners of the land so injured.* The defendant averred that the dam alleged as the cause of the injury was erected in pursuance of the authority conferred by the act ; that the provisions, requirements and conditions of the act were strictly complied with ; that he, the defendant, was the assignee of all and singular the rights and privileges granted by the said act to Jonas C. Baldwin ; and *that the plaintiffs had not applied to the judges of Onondaga to assess the damages* which they had sustained by their lands being flowed, &c. ; wherefore he prayed judgment, &c. There were three pleas substantially alike, to which the plaintiffs demurred, and the defendant joined in demurrer.

*C. P. Kirkland,* for the plaintiffs. The act relied upon by the defendant is a mere *private act* granting certain privileges to an individual. This is manifest from its title and from its provisions. It declares that the *privileges* granted shall continue twenty years, and that the *privileges* should cease if the dam was not completed within two years. The defendant, in his plea, also states himself to be assignee of the *privileges* granted to Jonas C. Baldwin.

The legislature may take private property for *public uses,* but they cannot constitutionally take the property of one individual and transfer it to another, though they provide that compensation shall be made; nor can they deprive individuals in such cases of their common law remedies; nor did they *intend* to do so in this case. The provisions of the act, as to the assessment of damages, give a cumulative remedy, if the parties injured choose to adopt it; but do not deprive them of their common law remedies, either expressly or impliedly, nor relieve the defendant of his common law liabilities. The case of *Crittenden* v. *Wilson,* (5 Cowen, 165,) is directly in point in support of this position; and such is the doctrine of the common law; " If a statute gives a remedy in the affirmative, without a negative expressed or implied, for a matter which was actionable by the common law, the party may sue at the common law as well as upon the statute; for this does not take away the common law remedy." (2 Inst. 200. Comyn's Dig. Action upon Statute, C.)

If the act deprives parties injured of their common law remedies, the defendant is not entitled to its protection without shewing that he has done every thing incumbent upon him to supersede the remedy by action. He ought to have averred that he had offered to agree upon the compensation, or that he had obtained the damages to be assessed and tendered them. Not having complied with the provisions of the act, he is not entitled to its benefits, and is therefore liable to this action. *The People* v. *The Hillsdale and Chatham Turnpike Company,* (2 Johns. R. 190.

*J. A. Spencer,* for the defendant. The act set forth in the plea is a public statute, and the dam was authorized to improve a public highway. (Beacon's Abr. tit. Statutes, F. § 1, 2, 6, 11.) Its object manifestly was to improve the navigation of the Seneca river, and the defendant is as much protected by its provisions, from actions at law, for carrying it into effect, as public agents of the state are in constructing canals and other public works, when acting under the authority of acts of the legislature, providing modes of compensation to parties aggrieved. (2 Johns. C. R. 162. 4 T. R. 794.

NEW-YORK,
May, 1830.

Calking
v.
Baldwin.

20 Johns. R. 735. Comyn's Dig. by Day, Action upon Statute, C. 11 Mass. R. 364. 12 id. 466. 8 Cowen, 150.) This being a public act, no express words of negation were necessary to take away the common law remedy. This case is distinguishable from that of *Crittenden* v. *Wilson*, by which merely a personal *privilege* was granted, without reference to public improvement,

The defendant was not bound to apply for the assessment of the damages. Either party had the right to make the application, and there is no reason why the defendant rather than the plaintiffs should have had the damages assessed.

*By the Court*, MARCY, J. To determine the principles of law applicable to this case, we must first ascertain the character of the act of the legislature under which the defendant justifies. The demurrer admits the injury complained of, and there is no dispute about the right to compensation. If this be a private act as contradistinguished from a public act, the law which was applied to the case of *Crittenden* v. *Wilson*, (5 Cowen, 167.) must govern. The plaintiffs are not in such a case confined to the remedy given by the act, but may proceed by action according to the common law. But if the work authorized by the act be of a public character, the case is altered, and the compensation which individuals are entitled to receive for injuries occasioned by it must be sought in the way pointed out by the act, and not otherwise.

A critical inspection of the act will settle the question as to the nature of the work. The power to erect the dam it is true is given to an individual, his heirs and assigns, but I apprehend that the nature of the work is not determined by that circumstance. The execution of a public improvement may as well be committed to an individual or to a company as to public agents. What is the declared object of the statute ? It is the construction of a dam at the head of M'Harrie's rift of such height as shall be necessary *for improving the navigation of the Seneca river*. It is to be constructed in a particular manner pointed out in the act so as to admit of the passage of rafts over it. In addition to this, a canal and lock are to be made for the passage of the largest sized boats

on the river. The river is a public highway. The objects, so far as I have detailed them, are all of a public nature; but it is not to be expected that either an individual or a company would make a public improvement without provision for remuneration of the expenses which must necessarily attend the operation. The act secures certain privileges to Mr. Baldwin and his heirs or assigns. It allows him to exact toll on property passing the lock and canal, and to take the water for mills and hydraulic works from the dam; and he is made liable for all injuries which the owners of the lands in the vicinity of the work may sustain thereby. There is nothing in his rights, privileges or duties, that distinguish this work from that made by the Delaware and Hudson Canal Company or the board of commissioners for the construction of the Albany basin. Both these associations have rights and privileges secured to them which are supposed to be quite sufficient to counterbalance the burdens and responsibilities which they necessarily assume by embarking in the enterprise; but these rights and privileges do not make the undertaking a private matter. The improvement authorized by the act under consideration, has all the characteristics usually marking the distinction between private and public works. I cannot hesitate to pronounce it a public work.

The principles settled by the court for the correction of errors in the case of *Rogers* v. *Bradshaw*, (20 Johns. R. 735,) applied to this case are fatal to the right of the plaintiffs to sustain this action. I think the statute authorising this work is as much a protection to the defendant as the canal laws are to the agents of the state for acts done by them in prosecuting those great works of internal improvement. The legislature have prescribed the mode in which the damages of the plaintiffs shall be ascertained, and in that mode only, can they properly seek compensation. The rule of construction, that if a statute gives a remedy in the affirmative, without a negative expressed or implied, for a matter which was actionable at common law, the party is not deprived of his common law remedy, but may elect to take it or that offered by the statute, does not I apprehend apply to acts done by the express authority of the legislature for a

public purpose.   Such certainly has not been the doctrine applied to   suits against our public agents employed on our works of internal improvement, and such is not the doctrine that I am willing to apply to this case.

The second point made on the part of the plaintiffs supposes, that the defendant by neglecting to have the damages assessed as the law directs is in default, and therefore is liable to be proceeded against according to the common law.  Where either party has power to carry into effect the statute remedy one cannot be in default more than the other for not beginning first.   The act under which the decision in the case of the *People* v. *The Hillsdale and Chatham Turnpike Company*, (2 Johns. R. 190,) was made, is not like this,  There the company alone had the right to have the damages assessed ; here, the right is reciprocal to both parties.

Judgment for defendant on demurrer, with leave to plaintiffs to reply on payment of costs.